## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:24-cv-60713-LEIBOWITZ

**REEL GAMES, INC.,**

*Plaintiff,*

*v.*

**EURO GAME TECHNOLOGY, LTD.,** *et al.,*

*Defendants.*

_____/

### ORDER

THIS CAUSE comes before the Court on Defendants Euro Game Technology, Ltd. ("EGT") and EGT Multiplayer, Ltd.'s ("EGT Multiplayer") (collectively, "Euro Games") Motion to Dismiss Complaint and Compel Arbitration ("the Motion") [Mot., ECF No. 38], filed on January 3, 2025. Plaintiff Reel Games, Inc. ("RGI") has responded to the Motion [Resp., ECF No. 43], and Euro Games has replied [Reply, ECF No. 53]. After a review of the record, the filings, and the parties' arguments, the Motion to Compel Arbitration is granted.[1]

### BACKGROUND

On March 15, 2014, RGI and EGT entered into an agreement ("the Licensing Agreement") through which RGI would distribute casino slot machines made by EGT in Bulgaria, as well as "multiplayer systems" such as electronic roulette and card games made by EGT Multiplayer in Bulgaria. [Compl., ECF No. 1 ¶¶ 1–2].[2] While EGT Multiplayer is not a party to the Licensing

---

[1] Because this Court finds that Euro Games is entitled to an order compelling arbitration, the Court does not analyze Euro Games' arguments that RGI's Complaint fails to state claims upon which relief can be granted.

[2] While not referenced in the Complaint, the parties entered into an "identical" Licensing Agreement in 2017. [Resp. at 16].

Agreement, it "nonetheless did business with [RGI] as if it were." [*Id.* ¶ 3]. Thereafter, RGI distributed EGT slot machines and EGT Multiplayer systems to casinos in the United States. [*Id.* ¶ 6]. RGI claims that because revenues from the Licensing Agreement were limited, EGT (1) "unilaterally changed the territory covered by the Licensing Agreement[,]" (2) approved RGI's business practices, but failed to reflect these business practices in the terms of the Licensing Agreement, or in open accounts and accounts stated rendered under the Licensing Agreement, and (3) EGT and EGT Multiplayer "consistently rendered false open accounts and false accounts stated." [*Id.* ¶¶ 9–11].[3]

After various problems with the performance under the Licensing Agreement, RGI entered into two Debt Settlement Agreements ("the Debt Settlement Agreements"), one with EGT and one with EGT Multiplayer, with the goal of "conditionally settl[ing] disputed open account statements and disputed accounts stated." [*Id.* ¶¶ 73–75]. However, neither of these agreements were ever performed. [*Id.*].

Relevant here, the Licensing Agreement includes the following arbitration clause:

15. GOVERNING LAW AND JURISDICTION

> All disputes shall be finally settled under the Rules of International Commercial Arbitration Act by Arbitrators appointed in accordance with the said Rules. Place of Arbitration is Sofia, Bulgaria or other independent arbitrators in Germany or France. The language of the Arbitration shall be conducted in English. All relations arising out of these Conditions shall be governed by and construed in accordance with the laws of Bulgaria, specifically excluding international private law or conflict of law rules. The prevailing party in any legal action shall be entitled to reasonable costs and fees in connection with the Arbitration procedure, including reasonable attorneys' fees. The U.N. Convention on the Sale of Goods shall not be applicable.

---

[3]     RGI alleges that Euro Games engaged in various other activities which form the basis for its breach of contract claim, but those facts are not relevant to the disposition of the instant motion. [*See generally* Compl.].

[Compl., Ex. A at 44]. Meanwhile, the Debt Settlement Agreements include the following arbitration clauses:

> **Article 10.**[4] This Agreement shall be governed by the laws of the Republic of Bulgaria.
>
> **Article 11.** All disputes, arising from this Agreement, the Sales Agreement or other arrangements between the Parties, or related to it or to their infringement, including those arising from or concerning its interpretation, invalidity, performance or termination, as well as the disputes for filing gaps in this contract or its adaptation to newly established facts, shall be referred for resolution to the Court of Arbitration at the Bulgarian Chamber of Commerce and Industry in compliance with its Rules for Litigations, based on arbitration agreements.

[Compl., Ex. B at 57–58; Ex. C at 70]. Based on these clauses, Euro Games initiated an arbitration proceeding in Bulgaria ("the Bulgarian Arbitration") on September 11, 2024.[5] [Mot. at 1; Resp. at 7].

RGI now brings four causes of action: (1) Breach of Contract against EGT and EGT Multiplayer, (2) Account Stated against EGT and EGT Multiplayer, (3) Open Account against EGT and EGT Multiplayer, and (4) Federal Declaratory Relief against all Defendants.[6] [Compl. ¶¶ 82–105].

## LEGAL STANDARD

**Personal Jurisdiction:** A court must engage in a two-part test when considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See Kelly v. Kelly*, 911 F. Supp. 518, 520 (M.D. Fla. 1995). First, a court must determine whether it has personal jurisdiction pursuant to Florida's Long-Arm Statute, Fla Stat. § 48.193, and second, a court must consider whether there are sufficient minimum contacts to satisfy the Due Process Clause of the

---

[4]    In the second Debt Settlement Agreement, these sections are in Articles 9 and 10, not 10 and 11.

[5]    RGI states that "[t]he '9/11' anniversary date may or may not be intentional." [Resp. at 7]. Whatever inference RGI is reaching towards here is baseless.

[6]    In addition to EGT and EGT Multiplayer, RGI sued "Euro Game Technology, LTD," a Bulgarian corporation, "Euro Technology, Ltd." a Defendant with a business address in Panama City, Panama, and "John Does 1–10," who allegedly committed the various breaches in concert with the named Defendants. RGI has not filed proof of service on any of these Defendants.

Fourteenth Amendment so that the maintenance of a suit does not violate traditional notions of fair play and substantial justice. *Kelly,* 911 F. Supp. at 520 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Where the court does not conduct an evidentiary hearing to determine the sufficiency of Defendants' contacts with the forum state, Plaintiff must establish a prima facie case of personal jurisdiction over non-resident Defendants." *Kelly*, 911 F. Supp. at 520–21; *see N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025).; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). The court shall review the pleadings and accept the facts asserted in the plaintiff's complaint as true unless controverted by the defendant's affidavits or evidence of the contrary. *See Meier*, 288 F.3d at 1269. If the defendant submits affidavits contesting the plaintiff's allegations, the plaintiff must support its claims with competent evidence. *Id.* When conflicting affidavits are presented, the court must resolve all factual disputes in favor of the plaintiff. *Id.*

**Compelling Arbitration:** Under the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Confronted with a facially valid arbitration agreement, district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1353 (S.D. Fla. 2024) (cleaned up) (emphasis in original); 9 U.S.C. § 3. "A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Calcaterra*, 733 F. Supp. 3d at 1353 (citing *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D. Fla. Mar. 7, 2013)). Thus, a court "may consider matters outside the four corners of the complaint." *Id.* (citing *Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009)). Courts should only compel

arbitration if (a) the agreement is enforceable under "ordinary state-law contract principles" and (b) the claims before the court fall within the scope of that agreement. *Lambert v. Signature Healthcare*, LLC, No. 19-11900, 2022 WL 2571959, at *4 (11th Cir. July 8, 2022) (citing *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008)).

## DISCUSSION

Euro Games makes three arguments in its motion: (1) the claims asserted in RGI's Complaint must be arbitrated, (2) the Court lacks personal jurisdiction over Euro Games, and (3) the Complaint should be dismissed for failure to state claims for relief against Euro Games. [Mot. at 7, 12, 14]. This Court first addresses Euro Games' second argument—that the Court lacks personal jurisdiction—because the Court cannot address the motion to compel arbitration without first having personal jurisdiction over the defendants.[7] Finding that the Court has personal jurisdiction over Euro Games, it next analyzes whether the claims asserted in RGI's Complaint must be arbitrated. The Court then discusses whether RGI's four claims must be arbitrated. First, the Court finds that the three contracts between RGI and EGT and EGT Multiplayer are enforceable; second, the Court finds that all of Plaintiff's claims fall within the enforceable arbitration clauses and accordingly must be arbitrated; third, the Court dispels with RGI's meritless arguments; fourth and finally, this Court finds that RGI improperly brought its Complaint against fictitious defendants and dismisses them from the case.

---

[7] *See Fair Gaming Advocs. Georgia Inc. v. VGW Holdings Ltd.*, No. 1:24-CV-00901-TWT, 2024 WL 5113237, at *5 (N.D. Ga. Dec. 13, 2024) ("Although the Eleventh Circuit has not explicitly addressed whether a district court can rule on a motion to compel arbitration in the absence of, or without determining the issue of, personal jurisdiction, the weight of the persuasive authority counsels the Court against doing so."); *Mitchell v. Fairfield Nursing & Rehab. Ctr, LLC*, No. 2:15-CV-00188-MHH, 2016 WL 1365586, at *4 n.4 (N.D. Ala. Apr. 6, 2016) ("A court must resolve issues concerning personal jurisdiction before deciding whether an arbitration agreement is enforceable.").

I.      This Court has Personal Jurisdiction over Euro Games.

Euro Games' argument on specific jurisdiction is insufficient to show that this Court does not have specific jurisdiction.  Euro Games' entire argument is that RGI did not plead the words "specific jurisdiction" and cited *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). However, *Carmouche* is wholly inapposite.  There, the Eleventh Circuit noted that it was not addressing specific jurisdiction because the appellant did not raise the issue on appeal.  *Id.  Carmouche* does not stand for the proposition that a plaintiff must include the words "specific jurisdiction" for a Court to have specific jurisdiction.  Accordingly, Euro Games argument is not only rejected, but it waived any substantive argument on specific jurisdiction.  Regardless, based on a review of the Complaint, this Court has specific jurisdiction over Euro Games.

In relevant part, Florida's Long-Arm Statute states that a defendant submits itself to personal jurisdiction in Florida if it is:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

a.   The defendant was engaged in solicitation or service activities within this state; or

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1)(a).  RGI claims that Euro Games "engaged in business in Florida through their contractual relationship with RGI to distribute EGT's slot machines and EGT Multiplayer's multiplayer gambling systems to Florida casinos and Indian casinos located in Florida, among other places."  [Resp. at 27].  RGI alleges that under the Licensing Agreement between RGI and Euro Games, RGI helped place Euro Games' slot machines in casinos in casinos in Florida.  [Compl., ECF

6

No. 1 ¶¶ 17–18; Decl. of Sean Smith, ECF No. 43-1 at 90–91]. [8] RGI further alleges that Euro Games unilaterally amended the Licensing Agreement to limit the sales territory of the slot machines from the entire United States to Florida and Puerto Rico alone, and then removed Puerto Rico, leaving only Florida.  [Compl. ¶ 28].  RGI then alleges that Euro Games breached the Licensing Agreement by considering lease payments from RGI as part payments for the slot machines.  [*Id.* ¶¶ 42, 48].

Construing all factual disputes in favor of RGI, this Court has specific personal jurisdiction over Euro Games.  Euro Games is alleged to have entered into a contract to place slot machines in casinos in Florida and allegedly breached that contract. [*Id.* ¶¶ 82-86].  Such activities clearly establish that Euro Games engaged in commerce in Florida (by leasing slot machines) and, taking RGI's allegations as true, breached the Licensing Agreement in Florida, satisfying Florida's Long-Arm Statute.  *See Kasparov v. Schnorenberg*, No. 3:15-CV-1093-J-32PDB, 2016 WL 8846261, at *5 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 3:15-CV-1093-J-32PDB, 2016 WL 9049968 (M.D. Fla. Sept. 6, 2016) ("Florida's long-arm statute conveys personal jurisdiction over a person who breaches a contract in Florida by failing to perform acts required by the contract to be performed in Florida."); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1332 (S.D. Fla. 2010).  Entering into a contract to provide slot machines in casinos in Florida additionally meets the constitutional due process test as Euro Games purposefully availed itself of Florida.  *See Petit-Bois v. A to Z Exp. of NH, Inc.*, No. 3:06CV261J32MCR, 2006 WL 1529549, at *6 (M.D. Fla. May 24, 2006) ("Florida courts have found the minimum contacts requirement satisfied when a non-resident has contracted with a Florida resident and the contract requires substantial performance in Florida."); *see also Angiamo Marine, Ltd. v. Ocean Marine, LLC.*, No. 18-CV-60401-WPD, 2018 WL 6514946, at *5 (S.D. Fla. Nov. 9, 2018) (citing

---

[8]        This Court can consider affidavits submitted by RGI.  *See Meier*, 288 F.3d at 1269.

*Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007)). Thus, Euro Games has sufficient contacts with Florida for this Court exercise jurisdiction over it.

Having found that the Court has specific personal jurisdiction over Euro Games, it need not analyze the standard for general jurisdiction.

II.      RGI's Claims Must Be Arbitrated.

Euro Games contends that this Court should compel arbitration for all of RGI's claims against them because the arbitration clauses are valid under Florida state law and RGI's claims are covered by the arbitration provisions in the Licensing Agreement and the Debt Settlement Agreements. [Mot. at 9]. In a sprawling response, RGI contends that (1) Bulgarian arbitration violates the FAA, two international conventions, and the first-to-file rule, and that it never consented to the arbitration (2) two recent United States Supreme Court cases have modified and updated the relevant interpretation of the FAA, (3) the arbitration clauses must survive the termination of the Licensing Agreement, (4) Euro Games' revoked the arbitration clauses, and (5) four conditions precedent to the Debt Settlement Agreements were never performed, thereby destroying the applicability of the arbitration clauses. [Resp. at 7–15]. RGI separately makes various factual and legal arguments related to its contentions that this Court addresses in turn. [*Id.* at 16–26]. For clarity's sake, this Court will first analyze Euro Games' Motion and then will address each of RGI's arguments and explains why none of RGI's contentions vitiate this Court's arbitration compulsion analysis.

As discussed above, courts should only compel arbitration if (a) the agreement is enforceable under "ordinary state-law contract principles" and (b) the claims before the court fall within the scope of that agreement. *See Lambert*, 2022 WL 2571959, at *4 (citing *Lambert*, 544 F.3d at 1195). This Court first analyzes whether the Licensing Agreement and the Debt Settlement Agreements, and the arbitration clauses contained therein, are valid and enforceable under ordinary state-law contract principles, and then discusses whether RGI's claims fall under those arbitration clauses.

8

a.   The contracts and the arbitration clauses are valid and enforceable.

At issue here are three contracts:  (1) a License and Distribution Agreement ("the Licensing Agreement") between RGI and EGT,[9] (2) a Debt Settlement Agreement between RGI and EGT ("the EGT DSA"), and (3) a Debt Settlement Agreement between RGI and EGT Multiplayer ("the EGTM DSA").  All three contracts contain arbitration clauses and choice-of-law clauses specifying that Bulgarian law applies to the construction of the contract.  [*See* Compl. at 44, 57, 70].  The first step in this Court's inquiry is to determine whether these contracts are valid under ordinary state law contract principles.

In diversity actions, courts are required to apply the forum state's conflict-of-law rules.  *Doe v. Roe*, 500 F. Supp. 3d 1319, 1324 (S.D. Fla. 2020), *aff'd*, No. 20-14456, 2022 WL 1447378 (11th Cir. May 9, 2022) (citing *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In Florida, "[w]hen

---

[9]      Although EGT Multiplayer was not a signatory to the Licensing Agreement, this Court believes that it too can compel arbitration under the Licensing Agreement, to the extent that RGI's breach of contract claim alleges that EGT Multiplayer breached the Licensing Agreement for two reasons.

First, RGI seemingly sues EGT Multiplayer for breach of the Licensing Agreement, which RGI admits EGT Multiplayer was not a party to, but claims that EGT Multiplayer "nonetheless did business with [RGI] as if it were.  [Compl. ¶ 3].  This, alone, is likely sufficient for this Court to find a contract implied in fact.  *See Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So. 3d 12, 15 (Fla. Dist. Ct. App. 2023) (noting that a contract implied in fact exists based on the parties' conduct).

Second, under the doctrine of equitable estoppel, EGT Multiplayer is able to enforce the arbitration clause in the Licensing Agreement because RGI relies on the terms of the Licensing Agreement to assert claims against RGI, the non-party.  *See Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1087–88 (11th Cir. 2024) ("Equitable estoppel allows a non-party to enforce the provisions of a contract against a signatory in two circumstances. The first is when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-party.  And the second is when the signatory raises allegations of interdependent and concerted misconduct by both the non-party and one or more of the signatories to the contract."); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020) (holding that "the New York Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines.).  RGI's Complaint (to the extent it brings its breach of contract action against EGT Multiplayer based on the Licensing Agreement) certainly meets the first circumstance of *Usme*, and possibly even the second.  Thus, because RGI seemingly brings a claim based on the Licensing Agreement against EGT Multiplayer, EGT Multiplayer can enforce the arbitration clause against RGI.

a false conflict exists, the law of the forum state–Florida–applies." *Id.* (citing *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983)).  A "false conflict exists where the laws of the interested jurisdictions would produce the same outcome[.]" *Id.* (quotation marks omitted).

RGI makes no convincing argument that the three contracts were invalid, as discussed below, and this Court finds that under either Florida law or Bulgarian law, the contracts are binding.  In Florida, a contract is valid when there is an "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014).  Under Bulgarian law, as briefed by Euro Games, the following elements must be met to have a binding contract:  "(1) consent between the parties on the essential terms of the contract; (2) lawful consideration for undertaking the obligations in the contract; (3) specific and possible subject of the contract; and (4) if applicable, compliance with any required form of the contract.[10]"  [Euro Games Supplement, ECF No. 63 at 1 (citing Civil Code [Obligations and Contracts Act] art. 9, 20(a) (Bulgaria))].

A false conflict exists between Florida and Bulgarian law because under both jurisdictions' laws, the three contracts are facially valid.  RGI and EGT or EGT Multiplayer signed the contracts, which were attached to RGI's Complaint, thereby acting as evidence that the parties agreed to the terms specified in the contract, satisfying the offer, acceptance, and essential terms prongs of Florida law and the consent and subject prongs of Bulgarian law.  [Compl. at 44, 59, 74].  The terms in each contract additionally satisfy both jurisdictions' requirement that there be consideration as each party is required to perform specific tasks in response to the other's requirements.  Because a false conflict exists, this Court will apply Florida law and finds that the Licensing Agreement and both Debt

---

[10]     Per Euro Games, "Bulgarian law does not require a certain form and/or format for a licensing or debt agreement, so the fourth element is not applicable."  [Euro Games Supplement, ECF No. 63 at 1 n.2].

Settlement Agreements, and the arbitration clauses contained therein, constitute valid and enforceable contracts.

>    b.  <u>RGI's claims fall within the scope of the arbitration clauses.</u>

The FAA creates a "presumption in favor of arbitrability" and "parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Lambert*, 544 F.3d at 1197 (citing *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–945 (1995).  When the parties execute a valid contract that includes a broad arbitration clause, all claims that stem from the contract must be arbitrated except those that have been specifically exempted from the arbitration provision.  *See Weiner v. Tootsie Roll Indus.*, Inc., 412 F. App'x 224, 229 (11th Cir. 2011) ("Courts are bound to 'rigorously enforce agreements to arbitrate' consistent with their stated terms.") (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Here, the arbitration clause in the Licensing Agreement states "[a]ll disputes shall be finally settled under the Rules of International Commercial Arbitration Act by Arbitrators appointed in accordance with the said Rules." [Compl., Ex. A at 44].  Similarly, the arbitration clauses in the Debt Settlement Agreements state:  "[a]ll disputes, arising from this Agreement, the Sales Agreement or other arrangements between the Parties . . . shall be referred for resolution to the Court of Arbitration at the Bulgarian Chamber of Commerce and Industry in compliance with its Rules for Litigations, based on arbitration agreements." [Compl., Ex. B at 57–58; Ex. C at 70].  In neither the Licensing Agreement nor the Debt Settlement Agreements are there any noted exceptions to these extremely broad arbitration clauses which require that "all disputes" which stem from the contracts shall be arbitrated.

Upon review of RGI's four causes of actions, all stem from the Licensing Agreement, the Debt Settlement Agreements, or both.  RGI's first cause of action is breach of contract against EGT

and EGT Multiplayer.  [Compl. ¶¶ 82–86].  Under its first cause of action, RGI alleges that EGT

breached the Licensing Agreement by "fail[ing] to do something required in connection with" it.  [*Id.*

¶ 85].  While RGI does not allege the specific contract which EGT Multiplayer purportedly breached

[*see id.* ¶ 83 ("[RGI] and EGT[ Multiplayer] entered into one or more written and oral contracts[.]"),

the only contracts which RGI mentions in their Complaint are the Licensing Agreement and the Debt

Settlement Agreements.  [*See generally* Compl.].  Because all relevant contracts contain a broad

arbitration clause that encompasses breach of contract claims, the claim falls under the arbitration

clause and this Court must compel arbitration as to Count I.[11]

As for RGI's second and third causes of action—Account Stated and Open Account—RGI

brings these causes of action under the Debt Settlement Agreements, as to both EGT and EGT

Multiplayer.  [*See id.* ¶¶ 73–81].  RGI claims that "[i]n both Debt Settlement Agreements, [RGI's]

intent was to conditionally settle disputed open account statements and disputed accounts stated."

[*Id.* ¶ 75].[12]  Thus, it is clear that Counts II and III fall under the Debt Settlement Agreements, which

include broad arbitration clauses with no exceptions for claims for account stated and open account,

and this Court must compel arbitration as to Counts II and III.  [*Id.* at 57–58, 70].

Finally, RGI's fourth cause of action—Federal Declaratory Relief under 28 U.S.C. § 2201, *et*

*seq.*—is similarly brought under the Licensing Agreement and the Debt Settlement Agreements.  [*Id.*

¶ 102].  In Count IV, RGI "desires a judicial determination of its contract status under the Licensing

Agreement, the Debt Settlement Agreements and other written and oral contracts between Plaintiff

---

[11]     As discussed below, EGT Multiplayer can enforce the arbitration clause under the Licensing
Agreement.  Therefore, even if RGI alleges that EGT Multiplayer breached the Licensing Agreement
rather than the Debt Settlement Agreement between RGI and EGT Multiplayer, compulsion of
arbitration is still justified.

[12]     RGI claims here that the Debt Settlement Agreements were not binding on either party
because the conditions precedent never occurred; but, as discussed below, this Court disagrees.  [*See*
Compl. ¶ 75].

and EGT and [EGT Multiplayer]." [*Id.*].[13]  None of the arbitration clauses in the Licensing Agreement

or the Debt Settlement Agreements make an exception for a claim under the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201.  [*Id.* at 57–58, 70].  Thus, RGI's fourth cause of action falls under

the arbitration clauses in the Licensing Agreement and Debt Settlement Agreements and must be

arbitrated.

Because the Licensing Agreement and Debt Settlement Agreements are valid and enforceable

contracts, and all of RGI's four claims fall under the arbitration clauses contained therein, all of RGI's

claims must be arbitrated.

c.   RGI's arguments fail.

RGI, in response, makes five broad arguments, none of which carry the day.[14]  This Court

now addresses each argument in turn.

i.   *Argument 1: Bulgarian Arbitration violates the FAA, two international conventions, and the first-to-file*

*rule, and that it never consented to the arbitration.*

Within this argument, RGI seems to make five sub-arguments.  First, RGI claims that the

Bulgarian Arbitration violates the FAA, seemingly because Euro Games initiated the arbitration

without RGI's consent.  [*See* Resp. at 7, 25].  RGI cites the following provision of the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under
> a written agreement for arbitration may petition any United States district court which,
> save for such agreement, would have jurisdiction under title 28, in a civil action or in

---

[13]     RGI does not specify what these "other written and oral contracts" are, or their essential terms, and thus, even if those other contracts do not have arbitration clauses, this Court must dismiss those claims for failure to plead the existence of those contracts.  *See Vega v. T-Mobile USA*, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) ("To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.").  Certainly, then, as to any claim brought under a contract other than the Licensing Agreement or Debt Settlement Agreements, RGI is entitled to bring another lawsuit.  But RGI's present pleading is plainly insufficient to state a claim as to these other contracts without specifying any of the essential terms of the contract, or even their existence.  This reasoning holds for RGI's breach of contract claim as well.

[14]     This Court attempts to summarize and present RGI's arguments succinctly, however, this Court is unsure exactly how many arguments RGI was attempting to make.

> admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

[*Id.* at 7 (citing 9 U.S.C § 4)].  It is unclear to this Court why RGI believes that Euro Games' initiation of arbitration in Bulgaria violated Section 4 of the FAA.  By its very terms, a party who is aggrieved by another party's refusal to arbitrate may petition a United States district court—but that did not occur here, and this provision is irrelevant to the current dispute.  For example, if RGI refused to arbitrate, Section 4 would allow Euro Games to file a lawsuit in a United States district court to compel arbitration.  But here, RGI filed suit against Euro Games.  Accordingly, this provision does not apply.  RGI contends later on that Section 4 requires that a court conduct an evidentiary hearing or trial and base its decision on "clear and unmistakable evidence."  [*Id.* at 25].  Section 4 provides no requirement.  Rather, RGI seems to have pulled this language from a recent United States Supreme Court decision that this Court will later explain is similarly irrelevant to the current case.  [*See id.* at 9 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–48 (2024))].

RGI's next sub-argument is that the Bulgarian Arbitration violates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention"), codified in 9 USC § 201, *et seq.*  The New York Convention "requires contracting states to recognize written arbitration agreements concerning subject matter capable of settlement by arbitration," and "encourage[s] the recognition and enforcement of commercial arbitration agreements in international contracts[.]"  *Plugchiev v. Royal Caribbean Cruises, Ltd.*, No. 12-22051-CIV, 2012 WL 12906162, at *1 (S.D. Fla. Sept. 5, 2012) (cleaned up).  United States district courts can hear cases brought under the New York Convention and may "direct that arbitration be held in accordance with the agreement at any place therein provided for[.]"  9 U.S.C. §§ 203, 206.  RGI highlights these two sections of the United States Code in its argument that the Bulgarian Arbitration violates the New York Convention.  How does the Bulgarian Arbitration violate the New York Convention and these two sections of

domestic law?  RGI does not say.  Nothing this Court can determine about the Bulgarian Arbitration violates the New York Convention or 9 U.S.C. §§ 203, 206.  In fact, this Court explicitly is allowed to compel arbitration if RGI's causes of action arise from the New York Convention.  Accordingly, RGI's argument here is rejected.

Third, RGI argues that the Bulgarian Arbitration violates the Inter-American Convention on International Commercial Arbitration ("the Inter-American Convention").  The Inter-American Convention, of course, only applies to signatory nations, and Bulgaria, a country in Europe, is not a signatory nation.  *See* Inter-American Treaties By Member States, Organization of American States, https://www.oas.org/en/sla/dil/inter_american_treaties_signatories_member_states.asp (accessed May 23, 2025).  RGI makes no actual argument that the Bulgarian Arbitration violates the Inter-American Convention; rather, it just states the section of the United States Code that authorizes a district court to compel arbitration and appoint arbitrators under the Inter-American Convention.  [*See* Resp. at 8].  Accordingly, RGI's sub-argument here is rejected.

RGI's fourth sub-argument is that the Bulgarian Arbitration violates the Eleventh Circuit's "first-to-file" rule.  [Resp. at 8].  The "'first-to-file' rule creates a creates 'a strong presumption' that the case should be heard by the **court** in which the matter was first filed."  *Elliott v. Williams*, 549 F. Supp. 3d 1333, 1338 (S.D. Fla. 2021) (emphasis added) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)).  RGI presents this Court with no authority that the first-to-file rule applies to arbitrations.  Rather, the case law supports the conclusion that the rule only applies to two cases brought in two different district courts.  *See Manuel*, 430 F.3d at 1135 ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."); *Vital Pharms., Inc. v. PhD Mktg., Inc.*, No. 0:20-CV-60993-WPD, 2020 WL 6162794, at *1 (S.D. Fla. July 28, 2020) ("The federal courts have long recognized that the principle of comity requires federal district courts

— courts of coordinate jurisdiction and equal rank — to exercise care to avoid interference with each other's affairs[.]").  Because the first-to-file rule does not apply to arbitrations, RGI's fourth sub-argument is rejected.

Finally, RGI's fifth sub-argument is that it never consented to the Bulgarian Arbitration. [Resp. at 8].  Specifically, RGI claims that it protested the jurisdiction of the Bulgarian Arbitration and that it was initiated without an order from this Court.  [*Id.*].  Of course, by agreeing to the Licensing Agreement and Debt Settlement Agreements, RGI consented to the Bulgarian Arbitration, as discussed above.  Nor has RGI made any sort of convincing showing that the Bulgarian Arbitration could commence only upon an order from this Court.  Accordingly, RGI's fifth sub-argument is rejected.

ii.    *Argument 2: Two recent United States Supreme Court cases have modified and updated the relevant interpretation of the FAA.*

Next, RGI argues that two recent United States Supreme Court cases "modified and updated the interpretation of the FAA, and overruled or modified most of the [Eleventh] Circuit['s] arbitration cases[.]" [Resp. at 8].  RGI refers here to two recent cases—*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), and *Smith v. Spizzarri*, 601 U.S. 472 (2024).  However, neither of these cases are relevant to the dispute at issue.

First, RGI claims that *Coinbase* stands for the "modified and updated legal principle" that "arbitration is strictly a matter of consent."  [Resp. at 9 (citing *Coinbase*, 602)].  Thus, RGI contends, because RGI does not presently consent to arbitration, the matter cannot be arbitrated.  [*Id.* at 22–23]. As discussed above, the arbitration clauses are valid under ordinary state law principles and are broad clauses, and thus encompass RGI's claims here.  RGI consented to the arbitration clauses by signing the Licensing Agreement and Debt Settlement Agreements, which included the broad arbitration clauses.  As for RGI's contention that *Coinbase* requires "clear and unmistakable evidence" that the

parties consented to arbitrate the issue of arbitrability, that issue is irrelevant in this instant dispute because this Court, not an arbitration board, is deciding whether RGI's claims should be arbitrated, and Euro Games makes no argument that an arbitration board, not this Court, should decide whether RGI's claims should be arbitrated.  [*See id.* at 9–10; *see generally* Mot.].

Next, RGI claims that under *Coinbase*, where there are conflicting arbitration clauses, an issue arises over which clause prevails.  [Resp. at 10].  But *Coinbase* on this point is similarly irrelevant – there, there were two arbitration clauses that conflicted and one would have required arbitration on the issue of arbitrability and the other would have required issues of arbitrability to be heard by California courts.  *See Coinbase*, 602 U.S. at 149–50.  Such is not the case here, where all of the arbitration clauses (in the Licensing Agreement and the Debt Settlement Agreements) are broad and would all send the same issues to arbitration.  The existence of multiple broad arbitration clauses does not necessarily insinuate that those clauses *conflict*.  Thus, *Coinbase* is irrelevant on this issue as well.

RGI specifically argues that the arbitration clauses conflict in four ways:  (1) they require arbitration to occur in different places, (2) they require arbitration to occur in different languages, (3) they require arbitration to follow different rules, and (4) the Licensing Agreement is silent on whether the arbitrator should decide "gateway" issues of arbitrability.  [Resp. at 19–20].  However, none of these purported conflicts show that the arbitration clauses conflict.  As for RGI's first argument, both arbitration clauses can be satisfied by holding arbitration in Bulgaria; therefore, the allowance of arbitration in Germany or France in addition to Bulgaria in the Licensing Agreement does not show that the clauses conflict.  Second, even though the rules of the Bulgarian Arbitration require arbitration in both English and Bulgarian, and the Licensing Agreement requires arbitration to be in English, and this does not create a conflict between the Licensing Agreement and the Debt Settlement Agreements.  Third, while the Licensing Agreement provides that the arbitrations must follow the "Rules of the International Commercial Arbitration Act" and the Debt Settlement Agreements require that the

arbitrations apply the "Rules for Litigations of the Bulgarian Chamber of Commerce and Industry," RGI has failed to show how these two would conflict with each other. It is certainly possible that compliance with one set of rules would satisfy compliance with the other. RGI has not met its burden here to show an actual, not a speculative, conflict. Fourth, the Licensing Agreement's silence on whether so-called "gateway" issues should be decided by the arbitrator does not conflict with the Debt Settlement Agreements "delegation" of "gateway" issues to arbitration. [*See id.*].[15]

Regardless, the Complaint seemingly pleads different causes of action as to each contract. While RGI's first count (breach of contract) does not specify which contract each Defendant is alleged to have breached, reading the Complaint liberally, RGI claims that EGT and EGT Multiplayer both breached the Licensing Agreement, and EGT and EGT Multiplayer each breached the Debt Settlement Agreements. [Compl. ¶¶ 82–86]. Thus, their claims can be arbitrated separately (or together, if the arbitrations satisfy the requirements of both clauses) and it matters not whether the arbitration clauses conflict.

Finally, RGI contends that under *Coinbase*, the "severability principle" requires that "the arbitration clause be challenged, or at least be challenged 'equally' with the agreement as a whole." [Resp. at 10]. "The severability principle establishes that a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole." *Coinbase*, 602 U.S. at 150–51. Here, as far as this Court can tell, RGI is challenging the arbitration clauses in the Licensing Agreement and the Debt Settlement Agreements—thus, RGI's challenge satisfies this

---

[15] This Court finds that the clauses do not conflict. Regardless, this analysis is unnecessary. RGI points out these four ways in which the clauses purportedly conflict because it claims that the Court must decide which arbitration clause governs. [Resp. at 21 (citing *Coinbase*, 602 U.S. at 148–49)]. However, *Coinbase* was explicitly cabined to determining which of two arbitration clauses governs when the two clauses conflict as to "who decides arbitrability[.]" *Coinbase*, 602 U.S. at 149. The Supreme Court there gave no indication that *Coinbase* extended to other questions beyond "who decides arbitrability." Thus, this Court's analysis here is unnecessary.

principle.  Still, this principle by no means leads to the conclusion that the arbitration clauses are invalid.

RGI next claims that *Smith v. Spizzarri*, 601 U.S. 472 (2024) "modifies and updates" procedural aspects of the FAA.  [Resp. at 11].  As RGI notes, *Smith* held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."  *Smith*, 601 U.S. at 475–76.  Thus, RGI is correct that because this Court finds that the underlying dispute is subject to arbitration, it cannot dismiss RGI's Complaint, but rather must stay the case pending arbitration in case the "arbitration breaks down or fails to resolve the dispute."  *Id.* at 477.

Neither *Coinbase* or *Smith* are particularly relevant to Euro Games's Motion, and neither case supports any of RGI's arguments that the Motion should be denied.

iii.    *Argument 3: The arbitration clauses don't survive the termination of the Licensing Agreement.*

RGI then argues that the 2014 Licensing Agreement was superseded by the 2017 Licensing Agreement, which in turn was terminated through nonrenewal in 2018.  [Resp. at 11–12].  While RGI does not mention the purported 2017 Licensing Agreement in its Complaint, [*see generally* Compl.], because a court can consider material outside the four corners of the Complaint on a motion to compel arbitration, *Calcaterra*, 733 F. Supp. 3d at 1353, the Court can consider the 2017 Licensing Agreement attached to RGI's response.  According to RGI, the 2014 and 2017 Licensing Agreements "have identical arbitration clauses . . . . Thus, finding that the 2017 Licens[ing] Agreement superseded the 2014 Licens[ing] Agreement should not cause controversy."  [Resp. at 16].  Therefore, as conceded by RGI, whether its claims fall under the 2014 or 2017 Licensing Agreement, the arbitration clause are the same, and the Court's analysis above stands.  The only issue, then, is whether the 2017 Licensing Agreement was "terminated," thereby rendering its arbitration clause unenforceable.

Considering for a moment RGI's contention that the 2017 Licensing Agreement was terminated in 2018, RGI does not automatically win.   "[A] plaintiff may bring a claim after the expiration of the contract when the claim arises under the contract."  *Bendlis v. NCL (Bahamas), Ltd.*, 112 F. Supp. 3d 1339, 1345 (S.D. Fla. 2015) (cleaned up) (citing *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205–06 (1991)).  A claim "arises under the contract" and is therefore subject to arbitration if "[1] it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or [2] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement."  *Bendlis*, 112 F. Supp. 3d at 1345 (citing *Litton*, 501 U.S. at 206).

As alleged, RGI's Complaint revolves, at least in great part, around facts and occurrences that arose before the expiration of the Licensing Agreement(s) in 2018.  [*See* Compl. ¶¶ 5, 6, 17, 28, 31, 67, 71].  Therefore, RGI's claims involve facts and occurrences that arose before the Licensing Agreement's expiration and the claims arise under the Licensing Agreement(s).[16]  Because RGI's claims arise under the Licensing Agreement(s), they are subject to arbitration under the Licensing Agreement's arbitration clause.  Furthermore, the Debt Settlement Agreements (both of which contain arbitration clauses) were signed on January 10, 2022.  [*Id.* ¶¶ 73, 74].  Thus, to the extent RGI's claims are based on the Debt Settlement Agreements, RGI's claims which are predicated on facts after 2022 may be arbitrated based on those clauses.

Moreover, even if RGI's claims were not predicated on facts before the expiration of the Licensing Agreement(s) and the Debt Settlement Agreements, the claims still must be arbitrated because the arbitration clauses would survive the termination of the agreements.  The Eleventh Circuit

---

[16]    RGI cannot seriously dispute that its claims arose under the Licensing Agreement(s) because it is bringing a breach of contract action predicated on the Licensing Agreement(s).

has found that broad arbitration clauses survive the termination of the agreement.  *See Montero v. Carnival Corp.*, 523 F. App'x 623, 626–27 (11th Cir. 2013) (finding that an arbitration clause that provides that "any and all disputes . . . shall be referred to and finally resolved by arbitration," which expressly included disputes regarding the agreement's termination, was broad enough to survive the termination of the agreement); *see also Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (finding that an arbitration clause which stated "any  and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration" survived termination).  The arbitration clauses in the Debt Settlement Agreements explicitly state that all disputes arising from the agreement, including those related to "its interpretation, invalidity, performance, or **termination**" shall be arbitrated.  [*See* Compl. at 97, 110].  Because the Debt Settlement Agreements' arbitration clauses specifically require all issues of termination to be arbitrated, this Court finds that the clauses survive any termination.

While it is true that the arbitration clause of the Licensing Agreement(s) does not explicitly deal with survival, other courts have found that broad arbitration clauses survive termination of the contract even where the arbitration clause does not explicitly say as such.  *See Bendlis*, 112 F. Supp. 3d at 1345 (finding a clause which specified that "any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with the Company ... shall be referred to and resolved exclusively by binding arbitration" was broad enough to survive termination of the contract); *Sisca v. Hal Mar., Ltd.*, No. 20-CV-22911, 2020 WL 6581608, at *2, *6–7 (S.D. Fla. Nov. 10, 2020).  Because the relevant arbitration clauses are broad here and state that "all disputes" shall be decided in arbitration, this Court similarly finds that the arbitration clauses survive the termination of the Licensing Agreement(s).

      *iv.*    *Argument 4: Euro Games revoked the arbitration clauses.*

RGI next argues that initiating the Bulgarian Arbitration "without this Court's order" is a revocation of at least the 2014 and 2017 Licensing Agreements' arbitration clauses. [Resp. at 14]. RGI presents no law or analysis as to why initiating the Bulgarian Arbitration would somehow "revoke" the arbitration agreements. As discussed above, Euro Games did not need to petition this Court before initiating arbitration proceedings. Thus, this argument is rejected.

      *v.*    *Argument 5: Four conditions precedent to the Debt Settlement Agreements were never performed, thereby*
                      *destroying the applicability of the arbitration clauses.*

Finally, RGI argues that the Debt Settlement Agreements' arbitration clauses were never effective because none of the four conditions precedent were fulfilled. RGI claims that its representative's signature on the Debt Settlement Agreements contained four conditions precedent: "(1) remove and replace EGT machines with new 'game designs' with a lower of 'return to player' percentage more favorable to casinos; (2) remove and replace EGT machines with new 'game designs' more in line with current trends; (3) [Gaming Labs International ("GLI")] certification of the lower 'return to player' percentage and new 'game designs,' as required by regulators before their use; and (4) sufficient progress towards these goals was made by December 31, 2022, in Reel Games' opinion." [Resp. at 23]. As evidence for these purported "conditions precedent," RGI submits a declaration of Sean Smith, the CEO of RGI in which he claims that his "written conditions" in the Debt Settlement Agreements were "short-hand" for the four conditions precedent described above. [Decl. of Sean Smith, ECF No. 43-1 ¶ 10].[17]

---

[17] This statement is inconsistent with the plain text of the Debt Settlement Agreements, and thus (at best) constitutes impermissible parol evidence which cannot be considered by this Court. *See Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000). While Sean Smith's declaration is not evidence of an oral agreement, the Debt Settlement Agreements are themselves complete and this statement would be inconsistent with their clear terms.

This Court has reviewed both Debt Settlement Agreements and found no "written conditions" that evince these four purported conditions precedent. The only "written condition" which Sean Smith seemingly added is that he wrote "as agreed to be reviewed 12-31-2022. Based on machine removed from casino and new GLI approvals." [*See* ECF No. 1 at 100, 114]. This "short-hand" cannot stand for the proposition that the four above-mentioned conditions precedent were required for the Debt Settlement Agreements to go into effect. A contract is valid only when the parties agree to its essential terms, and one party's subjective intent does not alter the plain terms of the contract. *See Citibank, N.A. v. Mazza*, No. 19-21216-CIV, 2020 WL 7493080, at *4 (S.D. Fla. Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 7493081 (S.D. Fla. Mar. 11, 2020). "[W]here a contract is facially complete and contains no ambiguous terms, Florida law requires those contracts be enforced in accordance with their terms." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1326 (S.D. Fla. 2016). There is no evidence, and no argument by RGI, that the Debt Settlement Agreements are ambiguous. Accordingly, this Court must apply only the terms specified in the contract.

RGI's argument flies in the face of basic contract principles. *See Veguilla v. Andino*, No. 18-24793-CIV, 2019 WL 6123928, at *1 (S.D. Fla. Nov. 19, 2019) ("[A] meeting of the minds of the parties on all the essential elements is a prerequisite to the existence of an enforceable contract[.]"). RGI cannot now, when it is convenient, invent conditions precedent in an effort to oppose arbitration.

*     *     *

None of RGI's arguments carry *any* water. They are based on either misinterpretations of the law, misinterpretations of the facts, or wish-casting as to what it hoped the law and facts would be. Such a failure is grounds alone to reject RGI's arguments.

III.   <u>Fictitious pleading is not allowed in federal court and the John Doe Defendants must be dismissed.</u>

RGI additionally brings its Complaint against "Does 1–10."  However, Rule 10(a) of the Federal Rules of Civil Procedure requires a complaint to "name all the parties."  Fed. R. Civ. P. 10(a).  "As a general matter, fictitious-party pleading is not permitted in federal court."  *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010) (affirming district court's dismissal of John Doe defendant identified merely as "Unknown Legal Name, Guard, Charlotte Correctional Institute") (citation omitted); *Moulds v. Bullard,* 345 F. App'x 387, 390 (11th Cir. 2009) (affirming dismissal of "John Doe corrections officers" in *pro se* complaint where the plaintiff "completely failed to describe some of those officers" and "gave general descriptions of others, such as by indicating the duty stations to which they were assigned"); *Picado v. Reyes,* No. 1:23-CV-20912, 2023 WL 7279322, at *4 (S.D. Fla. Nov. 3, 2023) (applying *Richardson* and *Moulds* as to inadequately identified John Does).  The Eleventh Circuit has "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be "at the very worst, surplusage."  *Id.* (cleaned up).

RGI claims that Defendant Does 1–10 are "unknown individuals who are officers, agents, or alter egos of Defendant EGT, or Defendant [EGT Multiplayer], or both; or individuals or entities that committed the acts or omissions described [in the complaint] with each of the other Defendant's actual and apparent authorization, approval, ratification or direction."  [Compl. ¶ 13].  Such identifying information is insufficient to qualify as "surplusage" as the description of these John Doe Defendants are extremely general.  Thus, this Court must dismiss the John Doe Defendants from the lawsuit.

RGI additionally sued Euro Game Technology, LTD, and Euro Games Technology Ltd., but has not served them.  Euro Games claims that these Defendants don't exist.  [*See* Mot. at 1 n.1].  Regardless, RGI failed to file a notice with this Court that these Defendants were served.  Accordingly, RGI must file a notice with the Court on whether it has served these Defendants.  The Court puts

RGI on notice that it does not believe that RGI has been diligent in serving these Defendants. *See Harris v. Orange S.A.*, 636 F. App'x 476, 485 (11th Cir. 2015); [*see also* ECF No. 20].

## CONCLUSION

For the reasons stated, it is **ORDERED AND ADJUDGED** that the Motion [**ECF No. 38**] is **GRANTED.** All disputes in RGI's Complaint must be heard in arbitration. The Clerk of Court is directed to **STAY** this case and **ADMINISTRATIVELY CLOSE** this case. The parties shall file notices with the Court indicating the status of the arbitration proceedings every sixty (60) days from the date of this Order. It is **FURTHER ORDERED** that Defendants John Does 1–10 are **DISMISSED.** RGI shall file a notice with this Court stating whether Defendants Euro Game Technology, LTD, and Euro Games Technology Ltd. have been served **no later than June 11, 2025.**

**DONE AND ORDERED** in the Southern District of Florida on June 1, 2025.



**DAVID S. LEIBOWITZ**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record